IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, WEST VIRGINIA**
**RIVERS COLIATION AND SIERRA CLUB,**

      **Plaintiffs,**

v.     CIVIL ACTION NO. 1:16-cv-70

**AUSTIN CAPERTON, Secretary, West Virginia**
**Department of Environmental Protection,**

      **Defendant.**

### WVDEP'S MEMORANDUM IN OPPOSITION TO
### PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES

Plaintiffs' motion is a bare attempt to extract money from a state agency based on the fact—as Plaintiffs would later discover—that *the agency was doing its job after all*. This kind of unseemly strike suit—suing a public agency under the Clean Water Act, obtaining a consent decree that merely preserves the status quo, and then seeking attorney's fees from limited taxpayer funds for their "efforts"—must be put to an end. In this case, the result of Plaintiffs' work was a consent decree that accomplished nothing other than enshrining in a court judgment the agency's *already planned measures* to comply with the Clean Water Act at abandoned mining sites where operators long ago walked away from their obligations.

WVDEP's consent to doing what it already planned and continues to do is hardly a basis for fee shifting under the Clean Water Act, which does not permit fee awards for symbolic or purely procedural victories, such as merely endorsing the status quo in a federal consent decree. 33 U.S.C. § 1365(d). Moreover, Plaintiffs could have obtained the *same exact result*—without the added time and resources of the state executive branch and the federal judicial branch—by

sending a FOIA request, or even less, calling WVDEP and seeking a meeting, rather than sending a Notice of Intent to sue followed closely by this lawsuit. Such a request would have demonstrated to Plaintiffs, at a minimum, that WVDEP was in fact addressing any compliance issues at the reclamation sites in the ordinary course. And such a course would have allowed the Plaintiff groups to serve their stated mission without interfering with the agency's important work of cleaning up abandoned mine sites in this State.

Instead, Plaintiffs chose litigation and this request for attorney's fees. As such, this fee request is about nothing more than redirecting precious public resources from improving the environment for the benefit of West Virginia and its people—the very interests the Plaintiff groups claim to exist to serve—to the payment of attorney's fees and expenses. If such is the result of this case, those citizen groups will have achieved not one additional dollar of water treatment for a West Virginia stream, but rather the redirection of more than $31,000 dollars to compensate lawyers who did nothing but detract from actual environmental remediation in this State. Ultimately, if anyone should be considered a "prevailing party" in this needless lawsuit, it is the West Virginia Department of Environmental Protection for being good stewards of tax dollars while performing its legal obligations as the law requires.

Plaintiffs' motion should be denied.

## BACKGROUND

The essential facts are undisputed. The West Virginia Department of Environmental Protection ("WVDEP") has inherited environmental clean-up responsibility on hundreds of abandoned mining sites where the operators walked away from their obligations. *See* W. Va. Code § 22-3-17(b). Those sites require both land reclamation and—more significantly, for purposes of this case and the ultimate financial burdens on WVDEP and the State—significant

2

water treatment to ameliorate acid mine drainage and other pollutants. *See, e.g.*, *W. Va. Highlands Conservancy, Inc. v. Huffman*, 588 F. Supp. 2d 678, 682-83 (N.D. W. Va. 2009).

Where a mine operator has willfully caused environmental violations or exhibited a pattern of violations of the permit or any requirement of Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), WVDEP may revoke the operator's permit and, upon revocation of the permit, "initiate procedures . . . to forfeit the entire amount of the operator's bond, or other security posted." W. Va. Code § 22-3-17(b). Upon forfeiture of the penal bond, WVDEP is required to reclaim and treat water at the site utilizing the penal bond and the resources available to it in the special reclamation fund. W. Va. Code R. § 38-2-12.4.c. Once WVDEP revokes a permit and forfeits the penal bonds relating thereto, WVDEP takes over the permitted site and is required to "initiate reclamation operations to reclaim the site in accordance with the approved reclamation plan . . . including action to remediate any acid mine drainage from the site." W. Va. Code R. § 38-2-12.4.c.

Pursuant to the Fourth Circuit's decision in *West Virginia Highlands Conservancy v. Huffman*, 625 F.3d 159 (4th Cir. 2010), WVDEP is required to obtain National Pollution Discharge Elimination System ("NPDES") permits under the Clean Water Act for its reclamation efforts at abandoned coal mining sites, and to abide by the same standards and enforcement criteria as any other permittee. In other words, one office of WVDEP applies to another office of WVDEP to obtain an NPDES permit for each abandoned bond forfeiture site. And then the permit issuance office at WVDEP enforces compliance with that permit against the Office of Special Reclamation ("OSR"), the WVDEP component responsible for remediating these sites. All of that has been done in this case. Exh. A, Sheehan Declaration ¶¶ 2, 3, 5 (hereinafter "Sheehan Decl.").

Plaintiffs are environmental groups who frequently sue WVDEP, other regulators, coal companies, and landowners. *See, e.g.*, ECF 38-1, Hecker Decl. ¶¶ 3, 4; ECF 38-2, Teaney Decl. ¶¶ 14-15. They are well-versed in the Clean Water Act and in interacting with, and obtaining information from, public agencies. *See generally id*. Plaintiffs filed this suit on April 20, 2016, claiming that the WVDEP was failing in its obligations under the CWA with respect to five sites in Preston and Barbour Counties. ECF 1, Compl. Because monetary damages are unavailable against the State in cases like these, the Complaint sought declaratory and injunctive relief plus attorney's fees and costs. *See id*. at *8-9.

Yet the lawsuit was unnecessary. For one thing, since the lawsuit was filed, WVDEP turned over 3,800 pages in discovery—every one subject to public disclosure through a simple FOIA request. W. Va. Code § 29B-1-3 ("Every person has a right to inspect or copy any public record of a public body in this state. . . ."); *Highland Min. Co. v. W. Va. Univ. Sch. of Med.*, 235 W. Va. 370, 381, 774 S.E.2d 36, 47 (2015) ("FOIA's disclosure provisions are to be liberally construed. . . ."). For another, although this Court's scheduling order had been entered less than three months prior, the parties met on December 12, 2016 and WVDEP freely shared its information about its efforts and plans at the reclamation sites, explaining in detail its schedule for achieving compliance at each. Sheehan Decl. ¶¶ 6-7. Specifically, WVDEP outlined its timeframe for compliance that was to be contained in the corrective action plans required under the enforcement action that was being carried out by the WVDEP's Division of Mining and Reclamation, which oversees enforcing the NPDES permits held by OSR. Sheehan Decl. ¶¶ 3-5. Those dates were not negotiated as part of any settlement with Plaintiffs—rather, they are part of the normal course of compliance developed by OSR outside of the context of this litigation. Sheehan Decl. ¶¶ 3, 5; Consent Decree ¶ 4.

After reviewing this information, Plaintiffs indicated that WVDEP's schedule was satisfactory, and that they would be willing to settle the case if WVDEP agreed to abide by its own timelines *and* to pay Plaintiffs' attorney's fees and costs. Sheehan Decl. ¶ 7; Consent Decree ¶¶ 38-39. Naturally enough, WVDEP agreed to abide by its own timelines and consented to judgment on those terms, which was entered on July 10, 2017. *See* ECF 37, Consent Decree ¶ 4 (explaining that "WVDEP explained its timetable for achieving compliance at each of the reclaimed sites" and that "[t]he dates found in th[e] Consent Decree are based on the schedule that *WVDEP had prepared for inclusion in the corrective action plans required under the current enforcement actions being carried out by the WVDEP's Division of Mining and Reclamation*") (emphasis added).

WVDEP refused, however, Plaintiffs' demand that the agency consent to paying Plaintiffs' attorney's fees and costs. *See* Consent Decree ¶¶ 38-39. This motion followed.

## ARGUMENT

The law's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010). In light of this presumption, Plaintiffs carry the burden to establish their entitlement to fees. *Spell v. McDaniel*, 852 F.2d 762, 765 (4th Cir. 1988).

**I.     Plaintiffs have not established an entitlement to a fee award.**

Section 1365(d) of the Clean Water Act provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). Accordingly, to recover attorney fees under this standard, the plaintiffs must

5

be the prevailing or substantially prevailing party, and the court must find that the attorney fees, expert witness fees, and miscellaneous costs sought are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1184–85 (3d Cir. 1995). Under the terms of the statute, "[a]n award of attorney's fees in favor of the prevailing party is not mandatory." *Student Pub. Interest Research Grp. of New Jersey v. Monsanto Co.*, 721 F. Supp. 604, 609 (D.N.J. 1995), *overruled on other grounds by Windall*, 51 F.3d 1179.

### A. Plaintiffs neither prevailed nor substantially prevailed in this case because the Consent Decree did not materially alter the parties' legal relationship.

To be a prevailing or substantially prevailing party, a party must receive an "enforceable judgment on the merits," which is defined as a "court-ordered . . . material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (quotations omitted). A material alteration "directly" benefits the plaintiff "by *modifying* the defendant's behavior" toward the plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (emphasis added). This rule is also consistent with the Fourth Circuit's recognition under *Buckhannon* that, even in the context of consent decrees, "approval and oversight of an agreement alone will not suffice to make a party a prevailing party." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 282 n.11 (4th Cir. 2002).

In this case, the Consent Decree did not *materially alter* the legal relationship of the parties for the simple reason that the decree did not "modify[]" the WVDEP's behavior toward Plaintiffs. *Farrar*, 506 U.S. at 111-12; *see also Buckhannon*, 532 U.S. at 605 ("Our precedents . . . counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties."). Rather, the Consent Decree here simply enshrined the status quo in an agreement backed by the immediate

6

enforcement powers of this Court—i.e., the obligations that WVDEP has already been performing with respect to the reclamation sites identified by Plaintiffs. Sheehan Decl. ¶¶ 3-8; *accord Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change.") (emphasis in original).

In short, the Consent Decree entered by this Court did not result in WVDEP modifying its behavior toward Plaintiffs; it merely agreed to 1) continue what it was already doing and what it planned to do going forward and 2) report its compliance progress. *See, e.g.*, *Sierra Club v. City of Little Rock*, 351 F.3d 840, 846 (8th Cir. 2003) (concluding that Sierra Club did not prevail under the terms of Section 1365(d) because "*the judgment* did not change the relationship between Sierra Club and the City") (emphasis added). It is thus not enough, as Plaintiffs argue, that WVDEP's obligations were embodied in a consent decree to justify "prevailing party" status.

Furthermore, any suggestion that the procedural reporting obligations imposed on WVDEP by the Consent Decree demonstrate an "alteration" in the parties' legal relationship is of no help. The Supreme Court does not require just any alteration—only a "material" alteration will do. *Buckhannon*, 532 U.S. at 604. And, again, it is not as though the procedural reporting obligations embodied in the Consent Decree achieve something different or otherwise unavailable to the Plaintiffs or the public. As with the presuit information Plaintiffs did not bother to request, all of the information about WVDEP's continuing reclamation operations is in the public domain and subject to FOIA. There is simply no material alteration present here. Absent such a change with a corresponding direct benefit, the plaintiff "achieves only a symbolic victory." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010).

In total, the circumstances of this lawsuit demonstrate that if anyone is to be named the prevailing party, it should be the WVDEP. This is true for several reasons. *First*, well before the Consent Decree was entered, WVDEP was already following and had planned to follow the law with respect to its permit obligations at the reclamation sites identified by Plaintiffs. Sheehan Decl. ¶¶ 3-6. *Second*, WVDEP was a good steward of taxpayers' money by ending the litigation as soon as practicable by consenting to a decree that merely restated what the agency was already doing with respect to the reclamation sites at issue. Sheehan Decl. ¶¶ 5-8. Less than three months after this Court entered its scheduling order, WVDEP met with and explained to Plaintiffs what the agency was doing and planned to do with regard to compliance efforts. Sheehan Decl. ¶¶ 4-6. The main sticking point for a resolution before July 2017, when the Consent Decree was ultimately entered, was Plaintiffs' demand that WVDEP agree to pay their attorney's fees— which WVDEP has steadfastly refused to do. *See* Consent Decree ¶¶ 38-39 ("Defendant maintains that no fees should be awarded for the negotiation, implementation, or future implementation of the Consent Decree.").[1]

### B. A fee award is not "appropriate" because Plaintiffs achieved only a purely procedural victory.

In addition to the "prevailing party" requirement, this Court must determine that the award is "appropriate" before awarding fees in this case. 33 U.S.C. § 1365(d). As the Supreme Court explained when addressing a previous version of the statute (which still contained the modifier "appropriate"), "the term 'appropriate' modifies but does not completely reject the traditional rule that a fee claimant must 'prevail' before it may recover attorney's fees." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686 (1983). Thus, "trivial success on the merits, or

---

[1] To be clear, the WVDEP is not cross-moving for an award of its attorney's fees. That WVDEP more closely resembles the "prevailing party" in this case only serves to illustrate the weakness inherent in Plaintiffs' overreaching motion for an award of taxpayer dollars.

purely procedural victories, would [not] justify an award of fees under statutes setting out the 'when appropriate' [sic] standard." *Id*. at 688 n.9; *see also Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005) ("When the plaintiff's success is purely technical or de minimis, no fees can be awarded. Such a plaintiff has either failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero.") (quoting *Farrar v. Hobby*, 506 U.S. 103, 117 (O'Connor, J., concurring)); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) (holding that "purely procedural victor[ies]" do not qualify for fees even under standards "less stringent" than the prevailing-party requirement). This Court is thus empowered with the discretion to deny Plaintiffs' fee award as not "appropriate" under the circumstances of this case.

At best, the consent decree that resulted from Plaintiffs' complaint was a purely procedural victory because it merely memorialized, in a court-backed agreement, WVDEP's promise to do what it was already doing and planning to do with regard to its permit obligations for the reclamation sites. And to the extent that the Consent Decree can be read to have provided Plaintiffs "success on the merits" of their claims, that success was trivial, because—again—WVDEP was already following a corrective action plan to achieve compliance with the NPDES permits. Sheehan Decl. ¶¶ 3-8. Likewise, the compliance information that Plaintiffs' obtained during the course of discovery would have been readily available through ordinary channels of public access, whether through informal consultation with WVDEP or, at minimum, via West Virginia's Freedom of Information Act. *See* W. Va. Code § 29B-1-3.

Accordingly, Plaintiffs' "success"—the Consent Decree—reflects (at best) a purely procedural victory by ensuring that WVDEP's already-planned compliance can be immediately compelled by this Court's contempt power.

## II.  Even if a fee award were appropriate in this case, it should be significantly reduced.

If this Court concludes that Plaintiffs are the "prevailing party" in this case *and* an award is "appropriate" under 33 U.S.C. § 1365(d), this Court must still evaluate whether Plaintiffs' requested award is reasonable. Under the Clean Water Act, the familiar "lodestar" method is used to calculate the amount of attorney's fees. *See, e.g., City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). To calculate a reasonable fee, the Court must follow a three-step process:

> First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. Second, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. [Third], the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 675–76 (4th Cir. 2015) (internal quotation marks and citations omitted).

Several independent reasons justify reducing the award to account for Plaintiffs' limited success in obtaining the Consent Decree. Under the second and third steps, this Court must reduce the lodestar to reflect unsuccessful claims and then make only such an award based on "the degree of success obtained" by Plaintiffs. *Hensley*, 461 U.S. at 436. In this case, a significant reduction in Plaintiffs' requested award is justified because they achieved only limited success in obtaining the Consent Decree. *See id.* at 439 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."). Ultimately, the Supreme Court has identified the measure of Plaintiffs' success as the "the most critical factor" to the overall computation of a reasonable fee award. *Id.* at 436.

In this case, well before Plaintiffs obtained a judicial order compelling WVDEP to adhere to the status quo with respect to the relevant NPDES permits, WVDEP had itself already decided to do so. The Consent Decree itself acknowledges this indisputable fact on its face. *See* Consent

Decree ¶ 4 (explaining that "WVDEP explained its timetable for achieving compliance at each of the reclaimed sites" and that "[t]he dates found in th[e] Consent Decree are based on the schedule that *WVDEP had prepared for inclusion in the corrective action plans required under the current enforcement actions being carried out by the WVDEP's Division of Mining and Reclamation*") (emphasis added). To the extent that Plaintiffs achieved some success in obtaining reporting requirements imposed on WVDEP, only a small award (if any) should be granted for such a result.

### III. Awarding fees in this case will open the floodgates for further strike suits against public bodies that will give rise to extensive collateral disputes over attorney's fees.

A fee award in this case would contravene the repeated instructions of the Supreme Court that the purpose behind fee-shifting statutes like Section 1353(d) is to award fees to deserving parties, not to generate "satellite" disputes over fees, *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992), which prompt "a second major litigation." *Hensley*, 461 U.S. at 437; *see also E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 577 (4th Cir. 2013) (observing "that tribunals determining fee awards under fee-shifting statutes have a strong, appropriate concern in avoiding burdensome satellite litigation over fee awards") (quotations omitted); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (explaining that "the desirability of avoiding a second major litigation strictly over attorneys' fees is high") (quotations omitted).

It is not difficult to imagine Plaintiffs repeating the exercise they undertook in filing this case against the WVDEP regarding numerous other bond forfeiture sites around this State. Rather than fight each case to its conclusion, costing the State enormous sums in defense costs, WVDEP would, in all probability, take the same course it did here: agree to end the litigation through a consent decree that enshrined the status quo compliance efforts in a judgment, even at

the small cost of assenting to regular reporting requirements. As the Assistant Director of the Office of Special Reclamation explained, this lawsuit required that he and his Division's other staff "take time away from performing" their "duties in achieving compliance with the Clean Water Act on those sites for which WVDEP has inherited responsibility from operators who abandoned them." Sheehan Decl. ¶ 9. "As a result," the Assistant Director declared, "this lawsuit has regrettably necessitated redirecting significant agency resources from the legal mission of the Office of Special Reclamation." *Id*.

Accordingly, the real dispute in cases such as this would not be about whether WVDEP was following the law; rather, it would be about the expected application for attorney's fees. But that is precisely what the Supreme Court has warned against. As a result, and for the many reasons stated above, this Court should reject the Plaintiffs' invitation to award attorney's fees that are unearned and unsupported by the Clean Water Act.

Dated:   August 11, 2017                                         Respectfully submitted,

                                                                 */s/ Michael B. Hissam*
                                                                 Benjamin L. Bailey (WVSB #200)
                                                                 Michael B. Hissam (WVSB #11526)
                                                                 J. Zak Ritchie (WVSB #11705)
                                                                 Bailey & Glasser, LLP
                                                                 209 Capitol Street
                                                                 Charleston, WV  25301
                                                                 (304) 345-6555 – telephone
                                                                 (304) 342-1110 – facsimile

                                                                 *Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, WEST VIRGINIA**
**RIVERS COALITION AND SIERRA CLUB,**

      **Plaintiffs,**

v.                                               CIVIL ACTION NO. 1:16-cv-70-IMK

**AUSTIN CAPERTON, Secretary, West Virginia**
**Department of Environmental Protection,**

      **Defendant.**

## CERTIFICATE OF SERVICE

      I, Michael B. Hissam, do hereby certify that on August 11, 2017, I electronically filed the foregoing "**WVDEP's Memorandum in Opposition to Plaintiffs' Motion for Award of Attorney's Fees**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

                J. Michael Becher, Esq.
                Derek Teaney, Esq.
                Appalachian Mountain Advocates
                P. O. Box 507
                Lewisburg, WV  24901
                mbecher@appalmad.org

                Jim Hecker, Esq.
                Public Justice
                1620 L Street N.W. Suite 630
                Washington, D.C. 20036

                                                */s/ Michael B Hissam*
                                                Michael B. Hissam (WVSB #11526)