**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, INC., et al.,**

        **Plaintiffs,**

**v.**                        **Civil Action No. 2:16-cv-0070**

**AUSTIN CAPERTON,**

        **Defendant.**

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION**
**FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

In its response opposing Plaintiffs' motion for attorney's fees and costs, WVDEP attempts to portray itself as the innocent victim of a "needless" "strike suit" filed by Plaintiffs for the sole purpose of "redirecting" public funds from environmental remediation to payment of attorneys' fees and expenses. WVDEP also claims that Plaintiffs could have achieved the same result with a simple Freedom of Information Act ("FOIA") request or phone call, instead of by filing a notice letter and a citizen suit.

WVDEP's characterization of this case is inaccurate. It is flatly inconsistent with the facts and timeline in the Hecker Declaration supporting Plaintiffs' motion. ECF 38-1. WVDEP's opposing declaration does not dispute those facts or timeline. ECF 43-1. Those facts show that (1) WVDEP is an admitted permit violator; (2) WVDEP stonewalled Plaintiffs by providing no information about its planned corrective actions for ten months after Plaintiffs sent their notice letter, (3) Plaintiffs' litigation position was reasonable; and (4) Plaintiffs have achieved the two conditions for prevailing party status: (a) a material alteration in WVDEP's conduct; and (b) judicial imprimatur of that alteration.

In January 2016, Plaintiffs sent WVDEP a notice letter alleging that it had violated its effluent limits in its permits at five bond-forfeiture sites.  Hecker Decl., ECF 38-1, at 3.  That letter listed 119 permit violations.  Pl. Ex. A.  It stated in its final paragraph:

> If WVDEP does not advise us of the steps that it may take during the 60-day period to correct these violations, we will assume that no such steps have been taken and that violations are likely to continue.  We will also be available to meet you during the 60-day period to attempt to resolve these issues without the need for further litigation.

*Id.* at 2.  Despite this request for discussion and a meeting, WVDEP did not respond, either by offering to meet or by providing any documents during the notice period.  Hecker Decl. at 3.

After the case began, WVDEP filed an answer containing no factual information about its compliance status or corrective actions.  *Id.* at 4.  In November 2016, WVDEP responded to Plaintiffs' document request by disclosing, for the first time, that WVDEP had issued an administrative order to itself in October 2016 (ten months after Plaintiffs' notice letter and six months after Plaintiffs' complaint) requiring it to establish a corrective action plan with compliance deadlines by January 17, 2017 (a year after Plaintiffs' notice letter).  *Id.*  The order itself contained no compliance deadlines.  *Id.* at 13.  It also listed more than fifty days of "documented violations of the permits."  *Id.* at 12.

Immediately after receiving this document, Plaintiffs' counsel called WVDEP's counsel and requested a meeting, which was held at the earliest practicable date.  *Id.* at 4. In that December meeting, WVDEP orally disclosed for the first time its planned compliance schedule.  *Id.* at 5. The meeting occurred eleven months after Plaintiffs sent their notice letter.  The deadlines disclosed in that meeting form the basis for the consent decree.  *Id.*

This chronology is undisputed and belies WVDEP's assertion in its response that it "was in fact addressing any compliance issues at the reclamation site in the ordinary course."

2

WVDEP Opp. at 2.  The notice letter alleged over a hundred violations.  In response to the notice

letter, WVDEP did nothing during the 60-day delay period.  It disclosed nothing about its

compliance status or corrective actions until Plaintiffs sent a document request in this case.

WVDEP's administrative compliance order was issued during the pendency of this litigation.

That order contained no compliance schedule.  WVDEP only disclosed a planned compliance

schedule for the first time at the December meeting.  WVDEP gave that schedule orally.  It was

not contained in any WVDEP document.[1]  The deadlines are now contained in a judicial consent

decree negotiated by Plaintiffs.

Moreover, this timeline establishes that Plaintiffs and their counsel did everything in their

power to bring the litigation to an efficient end.  Plaintiffs, through their notice letter, did offer to

meet prior to litigation.  Pl. Ex. A. at 2.  Plaintiffs initiated settlement negotiations by reaching

out to defense counsel at the first practicable opportunity.  Hecker Decl., ECF 38-1, at 4.

Plaintiffs agreed to move their expert witness and discovery deadlines to avoid incurring

additional costs.  ECF 24, 29.  WVDEP, which was in control of information and documents that

ultimately led to settlement, was apparently satisfied to pay litigation expenses and fees to

outside counsel, instead of making early efforts to end this matter.

If this is the way WVDEP conducts enforcement "in the ordinary course," then it is

woefully inadequate and justified a citizen suit, for three reasons.  First, by failing to respond

during the 60-day notice period, WVDEP forfeited any argument that the citizen suit was

unnecessary.  The purpose of that delay period is to encourage the alleged violator to take

---

[1] Indeed, had Plaintiffs sent a FOIA request to WVDEP prior to commencing this action, such a request would not have resulted in Plaintiffs' receipt of any documents indicating WVDEP's intended compliance dates, because no such documents existed prior to this litigation.

corrective action during that period to achieve compliance and avoid litigation. *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342, 1349 (7th Cir. 1997) ("the delay period gives the alleged violator an opportunity to clean up its act, voluntarily comply with [the law], and avoid litigation"). WVDEP does not even argue that it achieved permit compliance or took any corrective actions during the notice period. Plaintiffs therefore satisfied this statutory prerequisite for filing a citizen suit.

Second, it is fair to infer that Plaintiffs' citizen suit triggered the October administrative compliance order. "When a polluter settles with government authorities following the commencement of a citizen suit, it is permissible to infer that the citizen suit motivated the settlement, thereby making the plaintiff a prevailing party." *Armstrong v. Asarco, Inc.*, 138 F.3d 382, 387 (8th Cir. 1998).

Third, that order was insufficient by itself to compel compliance, because it lacked a compliance schedule. Plaintiffs were justified in seeking a consent decree and order that contained such a schedule, because it was necessary to ensure compliance.

Congress has specifically provided in the CWA that agency administrative orders can, at most, only preclude citizen suits for civil penalties, and cannot preclude citizen suits for injunctive relief. 33 U.S.C. § 1319(g)(6)(a)(iii); H. Rep. No. 1004, 99th Cong., 2d Sess. 133 (1986) ("this limitation would not apply to: (1) an action seeking relief other than civil penalties (e.g., an injunction or declaratory judgment)").[2] Thus, Congress determined that it was proper

---

[2] In fact, WVDEP lacks the necessary administrative enforcement authority to preclude a citizen suit under Section 309(g) of the CWA. *See Sierra Club v. Powellton Coal Co., LLC*, 662 F. Supp. 2d 514, 530 (S.D. W.Va. 2009) (holding that "West Virginia law is not comparable to section 309(g).")

for citizen suits like the present case to seek such relief despite prior administrative orders or other agency enforcement that are issued "in the ordinary course."  Far from being an unnecessary "strike suit," this case is consistent with the intended Congressional role for citizen suits.

WVDEP argues that the consent decree is not a material alteration of the parties' legal relationship because it embodied a "purely procedural" victory.  A victory is more than "purely procedural" "as long as the merits outcome produces some meaningful benefit for the fee-seeker."  *Gastronomical Workers Union Local 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 66 (1st Cir. 2010).[3]  WVDEP admits that under the consent decree, WVDEP's "compliance can be immediately compelled by this Court's contempt power."  WVDEP Opp. at 9. That is a meaningful benefit for Plaintiffs on the merits of their claims of permit noncompliance.

WVDEP also argues that the consent decree only "enshrined the status quo."  The consent decree modifies the legal relationship between the parties because it puts compliance deadlines in an enforceable court order.  The prior administrative consent order had no judicially enforceable components.  This material alteration from non-enforceability to judicial enforceability is sufficient to change the status quo and establish prevailing party status.

WVDEP does not cite a single case involving a judicially enforceable consent decree where a court has denied prevailing party status.   Instead, it relies on decisions that denied

---

[3]   *Cf.*, *e.g.*, *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 961 (N.D. Cal. 2013) (noting that "winning a motion for class certification or a motion to intervene would constitute a purely procedural victory"); *Olds v. Ret. Plan of Int'l Paper Co., Inc.*, 2011 WL 2160264, at *3 n. 2 (S.D. Ala. June 1, 2011) (giving as examples of procedural victories "favorable rulings on discovery disputes or motions in limine and orders disqualifying opposing counsel").

prevailing party status based on unenforceable private agreements or orders granting no relief.[4]

A consent decree approved and entered by a trial court is sufficient to make the party that obtains

relief a "prevailing party" under the fee-shifting statutes, because such a decree "is entered as an

[approved] order of the court ... and is subject to the oversight attendant to the court's authority

to enforce its orders, characteristics not typical of settlement agreements." *Goldstein v. Moatz*,

445 F.3d 747, 751 (4th Cir. 2006), *quoting Rivero*, 282 F.3d at 281.

### Conclusion

WVDEP does not question the reasonableness of the hours and hourly rates set forth in

Plaintiffs' motion. Plaintiffs therefore request that the Court grant their motion and award

attorneys' fees in the amount of $31,289.50, and expenses in the amount of $1,261.07, for a total

of $32,550.57.

Respectfully submitted,

**/s/ Derek O. Teaney**
Derek O. Teaney (WVBN 10233)
Joseph M. Lovett (WVBN 6926)
J. Michael Becher (WVBN 10558)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
Phone: (304) 793-9007
Fax: (304) 645-9008

JAMES M. HECKER (*Pro Hac Vice*)
PUBLIC JUSTICE
1620 L St. NW # 630
Washington, DC 20036

---

[4] *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 282 n. 11 (4th Cir. 2002) (private settlement agreement not incorporated into a court order); *Sierra Club v. City of Little Rock,* 351 F.3d 840, 846 (8th Cir. 2003) (order finding permit violation and retaining jurisdiction, but not ordering any relief); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 686 (1983) (order denying any relief).

6

Phone: (202) 797-8600, ext. 225
Fax:     (202) 232-7203

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, INC., et al.,**

        **Plaintiffs,**

**v.**                                **Civil Action No. 2:16-cv-0070**

**AUSTIN CAPERTON,**

        **Defendant.**

**CERTIFICATE OF SERVICE**

I, Derek O. Teaney, do hereby certify that, on August 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Benjamin L. Bailey
Michael B. Hissam
Jonathan Zak Ritchie
Maryl C. Sattler
Bailey & Glasser LLP
209 Capitol St.
Charleston, WV 25301
bbailey@baileyglasser.com
mhissam@baileyglasser.com
zritchie@baileyglasser.com
msattler@baileyglasser.com

                                   **/s/ Derek O. Teaney**
                                   Derek O. Teaney (W. Va. Bar No. 10223)
                                   Appalachian Mountain Advocates
                                   P.O. Box 507
                                   Lewisburg, WV 24901
                                   Telephone:  (304) 793-9007
                                   Fax:  (304) 645-9008
                                   Counsel for Plaintiffs